# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DAVID NATHENSEN,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 2:17-CV-49-JEM<br>) |
| NANCY BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on February 5, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed on August 7, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 12, 2017, the Commissioner filed a response, and on November 13, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

### I.    Procedural Background

On June 20, 2013, Plaintiff filed an application for benefits alleging that he became disabled on May 20, 2013. Plaintiff's application was denied initially and upon reconsideration. On November 16, 2015, Administrative Law Judge ("ALJ") Howard Kauffman held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On December 9, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since May 20, 2013, the alleged onset date.

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) and morbid obesity. His other medically-determinable impairments, including obstructive sleep apnea, are non-severe. Other alleged impairments, including sciatica, are not medically determinable.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 461.967(b), lifting up to 20 pounds occasionally and 10 pounds frequently and standing or walking for up to 6 hours in an 8-hour work day, except that he can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.

6. The claimant is able to perform past relevant work as a security guard and as a bus driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability from May 20, 2013, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.  Analysis

Plaintiff argues that the ALJ's assessment of Plaintiff's work-related abilities was not supported by substantial evidence because the ALJ omitted any limitations related to Plaintiff's obstructive sleep apnea, failed to consider the exacerbating effects of his obesity, and failed to consider his impairments in combination. The Commissioner argues that substantial evidence of record supports the ALJ's decision.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the

4

> individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to assess all of Plaintiff's symptoms and impairments, including those arising from his sleep apnea, and did not address Plaintiff's impairments in combination. Though the ALJ acknowledged that Plaintiff "suffers from moderate obstructive sleep apnea," as confirmed by a sleep study, he declined to list sleep apnea among Plaintiff's severe impairments because Plaintiff "never underwent his prescribed continuous positive airway pressure (CPAP) mask titration and refused to follow up" on his doctor's recommendation that he use a dental device. The ALJ's reasoning appears based on an assumption that, with treatment, Plaintiff's sleep apnea would not cause any significant limitation in his work-related functioning. As a result, the ALJ omitted from Plaintiff's RFC assessment any of his documented apnea-related limitations, including fatigue, reduced concentration, and a need to nap. However, the basis for the ALJ's medical conclusion is unclear. No doctor has opined that treatment would eliminate Plaintiff's symptoms or limitations, and the state agency doctors who reviewed Plaintiff's file did not even mention sleep apnea in their reports. Therefore, ALJ appears to have drawn "his own independent medical conclusion" about the severity of Plaintiff's sleep apnea, which he was not permitted to do.

*Myles v. Astrue,* 582 F.3d 672, 677-78 (7th Cir. 2009).

In addition, when considering non-compliance with treatment as a factor in determining the severity of a claimant's impairments, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p, 1996 WL 374186 at *7 (superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) as to claims filed on or after March 27, 2017); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. . . . The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The ALJ noted that Plaintiff "never underwent his prescribed [CPAP] mask titriation, and he refused to follow up with recommendations that he use a mouthpiece." Both Plaintiff's testimony and several pages of the medical record indicate that Plaintiff suffered from an irrational fear or panic, which he repeatedly described as "claustrophobia," which made him unable to tolerate the CPAP equipment. For that reason, he did not complete the titration process for the CPAP device.[1] The ALJ omitted that evidence and instead wrote that Plaintiff "did not comply with initial testing to see if he could wear [a CPAP] mask" and that no diagnostic testing had ever established that

---

[1] The Commissioner in her brief does note that Plaintiff declined a referral for mental health services to remedy his irrational fear; however, because the ALJ does not rely on Plaintiff's refusal of mental health services as a basis for his decision, the Court does not consider it here.

Plaintiff had claustrophobia. Additionally, the record contains evidence that Plaintiff was unable to find a dentist who would agree to make him the recommended dental device. Ignoring Plaintiff's explanations, the ALJ found that "the claimant's failure to follow his prescribed regimen detracts from his allegations regarding the severity and limiting nature" of his impairments.

Plaintiff also argues that the ALJ failed to assess all of Plaintiff's symptoms and impairments and did not address Plaintiff's impairments in combination. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ found that Plaintiff had severe impairments of "mobidly obese body habitus" and COPD, and the non-severe impairments of hypertension, obstructive sleep apnea, diabetes mellitus, and mild vertebral spurring. Plaintiff argues that the ALJ did not adequately address the exacerbating effects of his obesity and did not consider all of his severe and non-severe impairments in combination when formulating his RFC. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*,

7

277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted). In this case, the ALJ did include a statement that he had "tak[en] into account the exacerbatory impact of claimant's obese state" when considering his "severe and non-severe impairments." However, he did not state discuss in any detail what that "exacerbatory impact" was or discuss how Plaintiff's obesity affects his documented symptoms, including shortness of breath, fatigue, and difficulty performing postural movements. The bare statement that the ALJ had taken all of Plaintiff's impairments, including obesity, into account does not show the Court how, if at all, the ALJ incorporated Plaintiff's obesity into his RFC. Because of that omission and the omission of any limitations related to Plaintiff's obstructive sleep apnea, the ALJ did not create the requisite "logical bridge" enabling the Court to follow his reasoning from the evidence to his conclusion that Plaintiff could perform light work with few limitations. *Giles*, 483 F.3d 483 at 487.

### IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 23rd day of March, 2018.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record